## Otto Olson, Appellant, v. Louisa Brundage, Appellee.

### Gen. No. 4,946.

1. VERDICT—*when not disturbed.* A verdict will not be set aside on review if it compensates the plaintiff for the actual damages shown by the evidence merely in order that he may have another opportunity to seek the allowance of exemplary damages.

2. PRACTICE—*when motion to suppress depositions comes too late.* A motion to suppress depositions comes too late when first made during the trial if the objections were such as could be cured by the retaking of the depositions.

3. EVIDENCE—*when self-serving statements become competent.* Where one party introduces evidence as to a particular conversation, the entire conversation becomes competent even though it may contain self-serving declarations otherwise incompetent.

4. APPEALS AND ERRORS—*what question waived on review.* Questions not pointed out in the written motion for a new trial specifying grounds therefor, are deemed to have been waived and will not be considered on review.

Action in case for personal injuries. Appeal from the Circuit Court of Winnebago County; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed March 11, 1908.

B. A. KNIGHT and JOHNSON & JOHNSON, for appellant.

FISHER & NORTH, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

Otto Olson, appellant, brought this action in case against Louisa Brundage, appellee, to recover damages for personal injuries, and recovered a verdict for $75 on which judgment was rendered. Olson appeals and insists that the judgment is inadequate and that he should have been allowed exemplary damages.

The evidence shows that the appellee is a widow living on a farm south of the city of Rockford, and at the time of the injury for which this suit is brought appellee's daughters and their sons were visiting her. The boys had a 22-calibre target rifle, and had been shooting at a mark twenty-one feet distant. The boys laid the gun down and went to the fields, leaving appellee with her two daughters and a little grandson sitting on the porch. One of the daughters asked, "How does this thing shoot?" The other daughter said, "I can show you," and the appellee said, "I don't know, I can't load it." Thereupon the grandson took the gun to the appellee, and the party after some time and trouble got the gun loaded. The appellee said, "Where shall I shoot?" and pointed the gun towards some chickens in the yard nearby. One of the daughters said, "Don't shoot there, ma, or you may kill a chicken." Appellee again asked, "Where shall I shoot?" and looking towards her neighbor Carlson's farmhouse across the road from her residence saw appellant one hundred and nineteen yards distant in the lane driving a team and wagon toward the public highway, and without taking aim, said, "There comes Otto. I wonder if I could hit him," and fired the gun,

Olson v. Brundage.

hitting appellant in the fleshy part of the arm, the bullet lodging under the skin. The appellant shouted, "What did you shoot me for?" and jumped behind the wagon, and appellee called out, "Otto, did I kill you?" and he said, "Yes, you have." Appellee did not know she had shot the appellant and supposed he was jesting, but later learned from Carlson of the accuracy of her aim and the carrying power of the gun. As a result of the wound appellant claims to have lost his wages from July 25th to September 6th. He was receiving $30 per month, with his board and washing. He also visited a doctor three times, and suffered some pain. The evidence shows that three days after the injury he was playing an accordion with both hands, and three weeks after the injury was driving teams and doing other work. At that time he rolled up his sleeve and showed that his arm was healed. The jury who heard the evidence and saw the witnesses fixed the amount of the damages at $75. While we would not have disturbed the judgment had it been for a larger sum we would not be justified in setting aside a judgment that compensates for all actual damages, simply that appellant might make a second effort to obtain exemplary damages.

Appellant contends that error was committed in overruling a motion to suppress a deposition, made because of an alleged informality in the official certificate. The motion was not made until after the appellant had closed his evidence and appellee had offered the deposition in evidence. It was then too late to make a motion to suppress the deposition. Objections to the form of a deposition that can be cured by a retaking of the deposition, should be made and disposed of before the trial, so that the party may have an opportunity to remedy the defects. T., W. & W. R. R. Co. v. Baddeley, 54 Ill., 19; Merchants Desp. Transp. Co. v. Leysor, 89 Ill., 43. By not making the motion to suppress before beginning the trial, appellant waived any defect or irregularity in the mode by which the deposition was taken, and is precluded from taking advantage of such defect, if any, on the trial. The motion to suppress was properly

overruled, without regard to the fact that the deposition was taken upon a stipulation signed by the parties.

Appellant testified to conversations that occurred between himself and appellee, and, amongst other things, said he went to Brundage's to settle with her, and she said she would not settle, and "she would go to court with it." It is now insisted that there was error in permitting the appellee to offer evidence concerning these same conversations, explaining some statements and denying others. The only object of appellant in offering such conversations apparently was to try to show that appellee was destitute of sympathy and oppressive toward appellant. Appellant having offered evidence of conversations between himself and appellee subsequent to the accident, other parts of the same conversations which are favorable to appellee, and which qualify, explain or contradict what has been proved were competent in her behalf, although the matter offered by her would, if offered independently, be incompetent on the ground that the statements were self-serving. 1 Encyc. of Ev., 385–387; Morris v. Jamieson, 205 Ill., 87; Bailey v. Pardridge, 35 Ill. App., 121. So much of the conversation as relates to the subject-matter of the action may be brought out where a part of such conversations has been proved by the opposite party. There was no error in permitting appellee to testify to conversations that appellant had testified concerning.

Appellant states that the court erred in refusing three instructions requested by him, but makes no argument thereon and does not point out in what the error consisted, or wherein the jury were not fully instructed.

The motion for a new trial pointed out certain instructions the refusal of which was complained of; error is assigned on part of those pointed out in the motion for a new trial, and on some not enumerated in the motion for a new trial. Error cannot be assigned on instructions upon which no question was raised in the trial court. The only plea was not guilty, and the burden was on the appellant to prove his case. The instructions, of the refusal of which complaint is made, were all substantially given in the ap-

Kempton v. The People.

pellant's given instructions, and their refusal was harmless error, as they concerned the right of appellant to recover, and the verdict was for appellant.

Error is assigned on some instructions given for the appellee. The instructions conceded appellant's right to recover, and permitted a recovery of exemplary damages if the evidence warranted it. The jury by their verdict gave compensatory damages, which includes pay for pain, loss of time and expense, and might have allowed larger damages for the freakish act of appellee done evidently in ignorance of the power of modern firearms and without any intention of injuring appellant. Several instructions concerning "exemplary or punitive damages" were given at the request of appellee. Such damages are never recoverable as a matter of right, but always rest in the discretion of the jury. It is not a legal duty of a jury to award exemplary damages, but they may award such damages where the evidence warrants them. A verdict should not be set aside because of the failure of a jury to allow more than compensatory damages. That was the jury's privilege. Finding no error, the judgment is affirmed.

*Affirmed.*