**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-56080 |
| Plaintiff - Appellee, | D.C. No. 3:12-cv-02643-JLS-WVG |
| v. | |
| MARISELA CASTRO-JUAREZ, AKA Judy Maricella Juarez, AKA Marisela Castro Vargas, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted May 2, 2016
Pasadena, California

Before: PREGERSON, BYBEE, and N.R. SMITH, Circuit Judges.

Defendant-appellant Marisela Castro-Juarez (Castro) appeals the district

court's grant of summary judgment in favor of the United States stripping Castro

of her naturalized U.S. citizenship.  The district court found that Castro willfully

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

misrepresented and concealed material facts to procure U.S. citizenship because she failed to disclose her criminal history on her application for naturalization and in her INS interview. Castro concedes that she misrepresented her criminal history, but argues that she did not do so willfully. She contends she was unable to recall those facts at the time she filled out the form, due to traumatic events in her past that caused her to repress her memories. Castro also argues that her criminal history was not material because the acts occurred outside the relevant five-year period leading up to her application for naturalization, and that the government has not sufficiently shown that her criminal history renders her ineligible for naturalization. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Summary judgment is reviewed de novo. The moving party bears the initial burden of identifying evidence in the record that "it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, however, the burden shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Fed. R. Civ. P. 56(c).

The government is required to demonstrate by clear, convincing, and unequivocal evidence that Castro willfully misrepresented material facts on her

2

application for naturalization. *Kungys v. United States*, 485 U.S. 759, 767, 772 (1988). There is no dispute that the government met its initial burden on summary judgment. The question is whether Castro created a genuine dispute of fact as to her state of mind at the time she filled out her naturalization application. Castro's misrepresentation is "willful" if it was "deliberate and voluntary." *Espinoza-Espinoza v. I.N.S.*, 554 F.2d 921, 925 (9th Cir. 1977). Typically, a party's state of mind is a factual issue inappropriate for resolution at the summary judgment stage. However, where the facts are undisputed, issues of state of mind can become questions of law. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

Castro submitted an affidavit stating that the repeated sexual abuse she suffered as a child, as well as her time spent in foster care during adolescence, caused her to repress her memories of her years of illegal drug use, the near-year she spent in juvenile hall on burglary charges, and her additional arrest as an adult for use of PCP for which she made an appearance in court after having spent two nights in jail. Castro states that while she was in prison on unrelated charges over a decade later, she spent hundreds of hours in therapy and realized that the trauma of her past had caused her to repress memories of that past, including her criminal history. Castro submits no other evidence in support of her declaration.

Castro failed to create a genuine dispute of material fact here. "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *see also Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) ("When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."). While Castro's affidavit is quite detailed as to her history of abuse, she gives relatively few details about the events she claims are so critical to her case: the fact that she went through therapy, discovered she had repressed her memories, and in so doing was able to recapture years worth of traumatic memories that she had apparently lost. And, although she claimed she suffered trauma as a result of sexual and physical abuse, she offered no explanation as to why that affected her memory with respect to her juvenile incarceration of nearly a year and her subsequent arrest and jailing on drug charges.

Furthermore, even if she had tried to make such a connection, Castro, as a lay person, is not qualified to attest that her past trauma caused her memory loss. *See Frisone v. United States*, 270 F.2d 401, 402 (9th Cir. 1959); *Lawson v. Lawson*, No. 3:14-cv-00345-WGC, 2015 WL 5474763, at *2 (D. Nev. Sept. 17,

4

2015) ("Plaintiff may testify about his mental state and his physical condition, but he may not testify as to causation and cannot express medical diagnoses."). Absent any expert evidence corroborating Castro's statements, the district court did not err in refusing to accept Castro's affidavit as evidence that her history of abuse caused her to forget her criminal history. Castro thus failed to present any evidence sufficient to raise a genuine dispute of material fact as to her state of mind.

As to materiality, Castro's misrepresentations were material. A misrepresentation is material if it is "predictably capable of affecting, *i.e.*, [has] a natural tendency to affect, the official decision." *Kungys*, 485 U.S. at 771 (emphasis in original). In addition, the government must raise a "fair inference" that the applicant is statutorily ineligible for naturalization. *United States v. Puerta*, 982 F.2d 1297, 1304 (9th Cir. 1992) (quoting *Kungys*, 485 U.S. at 783–84 (Brennan, J., concurring)). The government submitted an affidavit from a Homeland Security agent indicating that, had immigration officials known about the outstanding warrant for Castro's arrest, her naturalization application would not have been approved. Additionally, it appears that Castro did not meet the good "moral character" requirement necessary for naturalization because she testified falsely during her immigration interview regarding her criminal history. *See* 8 U.S.C. § 1101(f)(6) (precluding a finding of good moral character where the

applicant has given false testimony in order to obtain an immigration benefit); 8 C.F.R. 316.10(a)(2)(vi). The government has raised more than a fair inference that Castro was ineligible for naturalization.

AFFIRMED.

FILED

JUN 28 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

Revoking Marisela Castro-Juarez's ("Marisela Castro") U.S. citizenship through summary judgment, thereby bypassing a trial on the merits, is inappropriate and cruel.

It is no exaggeration to describe Marisela Castro's adolescent and teenage years as a "living hell." From the age of six, Marisela Castro suffered ceaseless sexual abuse at the hands of multiple predatory men: two uncles, a tenant in her mother's house, and her mother's boyfriend. Her mother abandoned her when she was 11, choosing an abusive boyfriend over her own daughter.

Marisela Castro spent the next eight years bouncing around more than twenty foster homes and living on the streets. She frequently considered taking her own life.

During this time, when she was only fifteen, Marisela Castro was arrested for trespassing and spent six months in Juvenile Hall. She was homeless at the time, and she and a friend were in an abandoned home, looking for a place to sleep. On many other occasions, the police would find Marisela Castro sleeping in an abandoned home or in a field and take her to Juvenile Hall for the night or return her to her foster home.

1

When she was eighteen, Marisela Castro spent two nights in jail after being arrested by the Fresno police for drug intoxication. Having spent many nights in jail without having been arrested, Marisela Castro did not understand the circumstances of this arrest, and she assumed she was taken to Fresno jail to sleep off her condition.

Marisela Castro was depressed and angry and often felt like she did not care whether she lived or died. To survive this traumatic and unstable time in her young life, she blocked out negative painful and destructive memories.

Yet Marisela Castro was able to overcome her devastating past. She went back to school to earn her GED and to complete a medical assistant course. She now works full time as a sous-chef in a restaurant and single-handedly supports her three U.S. citizen children. Her two sons live with her, and her oldest daughter attends college. I find it hard to justify depriving Marisela Castro of her American citizenship through summary judgment.

It is important to keep in mind that "[i]n a denaturalization proceeding, the government bears a 'heavy burden' of providing 'clear, unequivocal, and convincing' evidence that citizenship should be revoked." *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012) (emphasis added) (quoting *United States v. Dang*, 488 F.3d 1135, 1139 (9th Cir. 2007)).

2

As the Supreme Court has emphasized, and we have reiterated, "The government bears the burden of such a high degree of proof in denaturalization proceedings because of the 'importance of the right that is at stake.'" *Id.* (quoting *Federenko v. United States*, 449 U.S. 490, 505–06) (1981)). Considering this "heavy burden," summary judgment for the government is rarely warranted. *Id.*

Marisela Castro raised a genuine issue of material fact as to whether the government met this high burden regarding the willfulness of her misrepresentations during her naturalization proceedings. Marisela Castro provided an extremely detailed sworn declaration. In her declaration, she described her criminal history—her stay in Juvenile Hall after being picked up for trespassing and the two nights she spent in Fresno Jail. She also described her mental state during the time of her naturalization proceedings to explain her inability to recall that history. She explained that she had deeply suppressed painful memories from her traumatic and abusive past in order to survive on the streets. She described the period of time in which these arrests took place as covered by a "mental fog."

The majority argues that Marisela Castro should have provided corroborating evidence regarding her "mental fog." But, as we have stated, "[A party's] sworn statements cannot be disbelieved at the summary judgment stage simply because [her] statements are in [her] interest and in conflict with other

3

evidence." *Arango*, 670 F.3d at 994. Marisela Castro's declaration speaks to her failure to accurately represent her criminal history and how she recovered her suppressed memories only after intensive individual and group therapy in prison that lasted several years.

Her declaration provides direct evidence of the central fact in dispute. The fact that Marisela Castro was able to recall some information, such as past residences, from the same time period does not discount the fact that her memory of this time period was not wholly reliable. Recent studies on PTSD and episodic amnesia support Marisela Castro's experience of memory loss. As one recent study on trauma and memory indicates, "If you are motivated to try to prevent yourself from reliving a flashback of [your] initial trauma, anything that you experience around that period of time of suppression tends to get sucked up into this black hole as well." Nicola Davis, *Suppressing Traumatic Memories Can Cause Amnesia, Research Suggests*, GUARDIAN, Mar. 15, 2016.[1]

Had there been a trial, an expert could have testified about the nature of memory suppression to support Marisela Castro's description of her "mental fog."

At the summary judgment stage, accepting Marisela Castro's experience of memory loss as true, she certainly has raised an issue of fact for trial. The majority

---

[1] For the full study, see Justin C. Hulbert et al., *Inducing Amnesia Through Systemic Suppression*, 7 NATURE COMM. 11003 (2016).

4

correctly notes that issues of a party's state of mind are typically inappropriate for resolution on summary judgment. Maj. at 3 (citing *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985)). Marisela Castro's case is no different.

Marisela Castro has provided evidence sufficient to overcome summary judgment. Her American citizenship is too precious to be torn from her without even a hearing where the government has to prove its case with clear, unequivocal, and convincing evidence. This is why I dissent.